**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JONATHAN RIDEOUT, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No.: 5:25-cv-04766-JMG |
| | : | |
| LB WATER, *et al.* | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

GALLAGHER, J                                                               May 12, 2026

## I.      INTRODUCTION

This case stems from Plaintiff's allegations that Defendant engaged in discrimination and retaliated after he took medical leave and sought accommodations related to his disability and caregiving responsibilities. Following discovery, Defendants moved for summary judgment on all claims. For the reasons that follow, the Court concludes that genuine disputes of material fact preclude judgment as a matter of law on certain issues, while others may be resolved on the present record. Accordingly, Defendants' Motion will be granted in part and denied in part.

## II.      FACTUAL BACKGROUND

Accepting Plaintiff's allegations as true, the facts are as follows. On June 7, 2021, Plaintiff Jonathan Rideout ("Plaintiff") was hired by Defendants LB Water, LB Water Services, Inc. and Adam White ("Defendant White") (collectively, "Defendants"). *Pl.'s Compl.* ¶ 1, 15. Plaintiff suffers from plantar fasciitis in both feet and has undergone multiple surgeries related to that condition. *Id.* ¶ 17. He also has two disabled children for whom he serves as a primary caregiver. *Id.* ¶ 19. His daughter is nonverbal and requires five therapy sessions each week, and his son has Autism. *Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J.* at 4.

In early 2023, Plaintiff notified Defendants that he would need to take medical leave to undergo additional surgeries. *Pl.'s Compl.* ¶ 20. Defendants approved the requested leave, and Plaintiff commenced FMLA-qualifying leave in June 2023. *Id.* ¶ 21. During his leave, Plaintiff remained in communication with Defendants regarding his medical status and anticipated return-to-work date. *Id.* ¶ 22. He returned to work in August 2023, with medical clearance. *Id.* ¶ 23.

Plaintiff alleges that on August 31, 2023, Defendant White held a warehouse meeting and announced that Plaintiff would be required to carry the emergency on-call phone 24 hours a day, seven days a week. *Id.* ¶ 24. According to Plaintiff, on-call responsibilities had historically been shared among employees on a rotating basis. *Id.* ¶ 25.

Plaintiff informed Defendants that he could not assume sole on-call duties because of his disability and his caregiving obligations to his disabled children. *Id.* ¶ 26. He requested a reasonable accommodation in the form of a return to the prior rotation. *Id.* Defendants allegedly refused this request and implied that Plaintiff's employment would be terminated if he did not accept the new requirement. *Id.* ¶ 28.

On September 1, 2023, Plaintiff reiterated that he could not serve as the sole on-call employee but could participate in a rotation. *Id.* ¶ 29. Defendants again refused and terminated his employment. *Id.* ¶ 30. Plaintiff alleges that Defendants' actions were motivated by discriminatory animus and retaliatory intent, and that he has suffered lost income, lost benefits, emotional distress, and other damages as a result. *Id.* ¶ 32-33.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) provides that a judge shall "grant summary judgment if there is no genuine issue as to any material fact and if the moving party is entitled to

judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Essentially, the Court must analyze "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52. A genuine issue of fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020) (quoting *Anderson*, 477 U.S. at 248). At this stage of litigation, all facts presented are viewed in the light most favorable to the nonmoving party, and the moving party "has the initial burden of demonstrating that *no* genuine issue of material fact exists." *Daniels v. City of Pittsburgh*, 2023 WL 2707178, at *2 (3d Cir. Mar. 30, 2023); *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 637 (3d Cir. 1993) (emphasis added).

To survive a properly supported motion for summary judgment, the nonmoving party must present affirmative evidence of specific facts in the record to demonstrate a genuine issue of material fact. *Anderson*, 477 U.S at 256-57; *Berkeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (citing *Pa. Prot. & Advocacy, Inc. v. Pa. Dep't of Pub. Welfare,* 402 F.3d 374, 379 (3d Cir.2005)) ("Although the non-moving party receives the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact."). It is not enough to "deny the allegations in the moving party's pleadings; instead, [Plaintiff] must show where in the record there exists a *genuine* dispute over a material fact." *Doe v. Abington Friends School*, 480 F.3d 252, 256 (3d Cir. 2007) (citations omitted) (emphasis added). In making this showing of a genuine dispute, "the non-movant may not rest on speculation and conjecture..." *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 666 (3d Cir. 2016). In addition, "conclusory, self-serving affidavits are insufficient to

withstand . . . summary judgment." *Gonzalez v. Sec'y of Dept. of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012). It is not the role of the Court to weigh the evidence provided by the Parties and make a determination as to which facts are true. Rather, the Court is instructed "to determine if there is a genuine issue for trial." *Josey,* 996 F.2d at 637.

## IV.     ANALYSIS

### A.  Counts I and II: ADA/PHRA Disability Discrimination and Retaliation[1]

In Counts I and II, Plaintiff asserts claims for American with Disabilities Act ("ADA) and Pennsylvania Human Relations Act ("PHRA") disability discrimination and retaliation. To establish a prima facie case of disability discrimination under the ADA and the PHRA, a plaintiff must establish: (1) he is a disabled person within the meaning of the ADA; (2) he was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of the discrimination." *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010); *Garcia v. Vertical Screen*, 592 F. Supp. 3d 409, 419 (E.D. Pa. 2022) (citing *Gaul v. Lucent Tech.*, 134 F.3d 576, 580 (3d Cir. 1998) (addressing the ADA); *Rinehimer v. Cemcolift*, 292 F.3d 375, 382 (3d Cir. 2002) ("The PHRA is basically the same as the ADA in relevant aspects and Pennsylvania courts generally interpret the PHRA in accord with its federal counterparts.") (internal quotations omitted)). With respect to Count II, a retaliation claim requires proof that: (1) a plaintiff engaged

---

[1] Plaintiff brings identical claims under the ADA and the PHRA. These claims are closely related and will therefore be analyzed concurrently. In other words, resolution of Plaintiff's ADA claims will also resolve his PHRA claims. *See e.g. Taylor v. Phoenixville Sch. Dist.,* 184 F.3d 296, 306 (3d Cir. 1999) (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996)) (The "analysis of an ADA claim applies equally to a PHRA claim."); *Hollingsworth v. R. Home Prop. Mgmt., LLC*, 498 F. Supp. 3d 590, 611 (E.D. Pa. 2020) ("The PHRA is basically the same as the ADA in relevant respects and Pennsylvania courts generally interpret the PHRA in accord with its federal counterparts.").

in protected activity; (2) the employer took an adverse action; and (3) a causal connection exists between the two. *Felicianon v. Coca-Cola Refreshments USA, Inc.*, 281 F. Supp. 3d 585, 592 (E.D. Pa. 2017); *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 231 (3d Cir. 2007).

Defendants contend they are entitled to summary judgment because Plaintiff is not disabled within the meaning of the ADA or PHRA and, in any event, because the record contains no evidence of disability discrimination based on association. *See generally Defs.' Mot. for Summ. J.* Defendants emphasize that Plaintiff acknowledged his plantar fasciitis had "fully healed" before he returned to work in August 2023 and that his medical provider cleared him to resume his duties without restrictions. *Id.* at 3-4.

As to the discrimination claim, Plaintiff responds that Defendants' focus on whether he remained disabled misses the point. . *Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J.* at 5. His theory is not limited to his own impairment, as he also asserts associational discrimination, contending that Defendants took adverse action because of his known relationship with his two disabled children. *Id*. To prove associational disability discrimination, Plaintiff must show that: "(1) she was 'qualified' for her job at the time of the adverse employment action; (2) she was subjected to adverse employment action;" (3) her employer knew at the time that she had a relative or associate with a disability; and "(4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision." Douglas v. Kensington Cmty. Corp. for Individual Dignity, 775 F. Supp. 3d 881, 901 (E.D. Pa. 2025) (citing Den Hartog v. Wasatch Academy, 129 F.3d 1076, 1085 (10th Cir. 1997)).

The record contains evidence from which a reasonable jury could find that Defendants took adverse action against Plaintiff because of his association with his disabled children. Plaintiff

testified that Defendants were aware of his children's disabilities from the outset of his employment, and he again informed his supervisor upon returning from leave. *Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J.* at 5-6; *Pl.'s Supp. Facts* ¶ 89, 111-112.

He further explained that his caregiving responsibilities made it impossible for him to accept on-call duty, and he requested a rotation instead. *Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J.* at 5. According to Plaintiff, Defendants' own interrogatory responses corroborate that Plaintiff stated he had "family commitments at home," and Plaintiff's sworn testimony confirms he expressly told Defendant White that he had two disabled children and could not be continuously on call given his home responsibilities. *Pl.'s Supp. Facts* ¶¶ 95, 115.

As to the retaliation claim, the Court reaches the same conclusion. A reasonable jury could find in Plaintiff's favor. Defendants contend that Plaintiff's protected activity did not occur because he never formally requested an ADA accommodation. *Defs.' Mot. for Summ. J.* at 5. But the record shows he explained that he could not accept indefinite on-call duty due to his disabled children's caregiving needs and asked for a rotation. *Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J.* at 4.

Whether those statements amounted to a request for accommodation – and thus constituted protected activity – is a factual question for the jury, not one suitable for summary judgment. Relatedly, as Plaintiff notes, a jury could also reasonably infer that Defendants acted adversely to his recent protected leave and return to work, particularly where the disputed assignment was imposed just days after his return and his termination followed almost immediately thereafter. *Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J.* at 14.

Taken in the light most favorable to Plaintiff, the evidence is sufficient to create a genuine dispute of material fact as to whether Defendants acted adversely toward him because of his association with disabled family members and whether they retaliated against him. At this stage,

Plaintiff need only produce evidence from which a jury *could* reasonably infer discriminatory motive or retaliation – not prove those claims conclusively. This Court finds Plaintiff has met that burden. Accordingly, summary judgment on Plaintiff's discrimination and retaliation claims is inappropriate.

### B.  Count III: Hostile Work Environment

Plaintiff also asserts an ADA/PHRA hostile work environment claim. Plaintiff alleges that within forty-eight hours of returning from twelve weeks of medical leave, he was confronted with an ultimatum directly tied to his disability-related obligations, dismissed with a contemptuous generalization about his home situation, and then terminated. *Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J.* at 15. Plaintiff argues that whether this sequence of events – occurring immediately upon his return from leave and explicitly referencing his need to care for his disabled children – constitutes a hostile work environment is a question for the jury. *Id.*

Defendants counter that summary judgment is warranted because Plaintiff has produced no evidence of conduct that was "severe or pervasive," as required under the ADA and PHRA. *Defs.' Mot. for Summ. J.* at 6-8. To determine whether such an environment is hostile, courts consider all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Clark Cty. Sch. Dist. V. Breeden*, 532 U.S. 268, 270-71 (2001); *Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 667 (3d Cir. 1999) (*citing Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993)).

Plaintiff's hostile work environment claim cannot survive summary judgment. To proceed, Plaintiff must produce evidence that the workplace was "permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions

of [his] employment and create an abusive working environment. *Kimes v. Univ. of Scranton*, 126 F. Supp. 3d 477, 498 (M.D. Pa. 2015) (*citing Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S 101, 116 (2002)). He has not done so. Plaintiff has not identified any derogatory statements, no pattern of disability-related comments, no ongoing negative treatment, and no abusive or harassing conduct by Defendants. Instead, Plaintiff's allegations appear to amount to a workplace disagreement concerning his refusal to accept on-call duty and the subsequent termination decision.

Courts often hold that isolated disputes or employment disagreements do not satisfy the severe or pervasive standard as a matter of law. *See, e.g., Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 547 (2d Cir. 2010) ("Isolated incidents generally will not suffice to establish a hostile work environment unless they are extraordinarily severe."). As the Third Circuit has emphasized, "it is a rare and extreme case in which a single incident will be so severe that it would … make the working environment hostile." *Ali v. Woodbridge Twp. Sch. Dist.*, 957 F.3d 174, 181 (3d Cir. 2020). Plaintiff's description of an ultimatum regarding on-call responsibilities, even if abrupt or unwelcome, does not approach the level of hostility required under the law. Because no reasonable jury could find that Plaintiff was subjected to conduct that was severe or pervasive, Defendants are entitled to summary judgment on this claim.

### C.  Count IV: Aiding and Abetting

Next, Plaintiff brings an aiding and abetting claim against Defendant White. Defendants argue that summary judgment is warranted because Plaintiff has not produced evidence of

disability discrimination or any discriminatory acts personally attributable to Defendant White. *Defs.' Mot. for Summ. J.* at 9-10.

Plaintiff responds that Defendant White participated in the alleged hostile work environment and in the decision to terminate his employment. But liability under an aiding and abetting theory requires a cognizable predicate offense. *Syfri v. Trustees of Univ. of Penn.*, 2025 WL 590337 at *10 (E.D. Pa. 2025); *Williams v. Aramark Campus LLC*, 2020 WL 1182564, at *10 (E.D. Pa. Mar. 12, 2020) ("For liability to be imposed on an aiding and abetting theory… there must be a cognizable predicate offense… a violation by the employer of the PHRA's primary anti-discrimination provision"). In other words, because Plaintiff's hostile work environment claim fails as a matter of law, Plaintiff's corresponding aiding and abetting claim must fail as well. Without a viable predicate act of discrimination, the aiding and abetting claim cannot stand. Defendant White is therefore entitled to summary judgment on Count IV.

### D.  Count V and VI: FMLA Interference and Retaliation

Lastly, Plaintiff asserts claims for FMLA interference and retaliation. Defendants argue that summary judgment is warranted because Plaintiff was not an eligible employee under the FMLA, did not request FMLA leave, and has not connected his termination to any exercise of FMLA rights. *Defs.' Mot. for Summ. J.* at 11. To state an interference claim, a plaintiff must show: "(1) he was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) he was entitled to FMLA leave; (4) he gave notice of his intention to take FMLA leave; and (5) he was denied benefits to which he was entitled." *Ross v. Gilhuly*, 755 F.3d 185, 191–92 (3d Cir. 2014). Likewise, to state a retaliation claim, Plaintiff bears the burden of establishing that he (1) invoked his right to FMLA-qualifying leave; (2) he suffered an

adverse employment decision, and (3) the adverse action was causally related to his invocation of rights. *Budhun v. Reading Hosp. and Medical Center*, 765 F.3d 245, 256 (3d Cir. 2014).

Plaintiff has not offered any evidence that he was eligible for FMLA, nor does he identify any evidence that he requested leave under the FMLA or was denied any FLMA-protected benefit. These deficiencies are fatal to an interference claim as a matter of law.

Plaintiff argues instead that the close temporal proximity between his return from medical leave and his termination – approximately forty-eight hours – constitutes "powerful evidence" of retaliatory motive. *Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J.* at 17. But temporal proximity alone cannot sustain an FLMA retaliation claim where the Plaintiff did not engage in activity protected by the FMLA. *Parrotta v. PECO Energy Co.*, 363 F. Supp. 3d 577, 602 (E.D. Pa. 2019) ("Federal law, including the FMLA, does not allow a retaliation when [plaintiff] fails to establish he invoked his rights under the FMLA.").

Because Plaintiff has not identified any evidence that he was eligible for FMLA leave or that he invoked FMLA rights, he cannot establish the protected activity necessary to support a retaliatory theory. Accordingly, Plaintiff has failed to produce evidence support either FMLA interference or retaliation, and Defendants are entitled to summary judgment on these claims.

## V.     CONCLUSION

Plaintiff raises factual disputes regarding whether Defendants were aware of his children's disabilities and whether Defendants acted because of his association with disability family members. These disputes create genuine issues of material fact, and therefore summary judgment is not warranted on Plaintiff's ADA/PHRA disability discrimination and retaliation claims. However, Plaintiff has not established the elements necessary to support his hostile work environment claim, his PHRA aiding and abetting claim, or his claims for FMLA interference and

10

FMLA retaliation. Because the record contains no evidence sufficient to sustain these theories, summary judgment is warranted in Defendants' favor as to those claims. An appropriate Order follows.

BY THE COURT:


*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge